Good afternoon, your honors. May it please the court, counsel. My remarks will be brief, but I'll be happy to answer any questions or try to at least that the court might have. At the post-conviction hearing, there are essentially three main witnesses. The defendant, attorney Shadid, and now judge Shadid, and detective Brown. The defendant testified that he repeatedly invoked counsel and that his requests for counsel were ignored by the investigating detectives. There was some corroboration by family members that they were trying to contact the lawyer at the defendant's request on the day of the interrogation. Detective Brown testified that he was present when another detective defended his Miranda warnings and did not invoke counsel. However, he stated that he went home shortly after that and the interrogation continued for somewhere between six and eight hours in his absence. Shadid testified that he did not recall the defendant telling him he had repeatedly invoked counsel. Shadid also offered that he wanted to use the defendant's videotape statement to support his trial theory that the defendant did not know anyone was home when the shots were fired. So in short, we have an unequivocal claim by the defendant that he repeatedly invoked counsel during the interrogation and those requests were ignored. We have a detective who says the defendant did not invoke counsel, but he was absent from the interrogation for somewhere between six and eight hours. Shadid said that he did not recall the defendant telling him that he invoked counsel. However, under these circumstances, the defendant has met his burden and he should have been granted a new trial. As noted in the briefs and here today, Shadid's reason for not filing a motion to suppress the defendant's statement is not sound trial strategy. If the motion to suppress had been granted, it would not have precluded him from raising the defense that the defendant didn't think anyone was in the house. More importantly, though, if the statement had been suppressed, it would have put the defendant in a far better position. Without the defendant's admission, there may not have been a trial at all, given how weak the state's case would be. Further, if for some reason the defense still decided to introduce the statement, nothing would have prevented them from doing so. So for all these reasons, Charles Childs asked that the trial court's ruling be reversed and his cause remanded for a new trial. Thank you. Thank you, Mr. Comedy. Mr. Hanson. Good afternoon, Your Honors. May it please the court and counsel. Your Honors, I, too, will be brief, given the brevity of my opponent's argument. The judge at this hearing, this evidentiary hearing, gave a model opinion. It would be wonderful if all judges were so clear in what they said. He noted the defendant's claim, the claim that he asked the police for an attorney. He noted Detective Grau's testimony to the contrary. And, indeed, it makes no particular sense that he would not, this attorney, this defendant, would not have asked Detective Grau for an attorney in claims he just asked the other attorneys. Indeed, he didn't make that claim. He said he asked every detective for an attorney, and Detective Grau, among others, didn't give it to him. The judge noted that the defendant said he told his attorney of his request to the police for an attorney, and he noted the defendant's attorney's contradictory testimony. The judge saw the witnesses and determined credibility. That's why we have judges to decide evidentiary hearings and post-conviction matters. He noted that counsel's defense was a lack of knowledge and that the defendant's statement aided that. The statement aided that defense of lack of knowledge because, and counsel talked about this. Again, it's all in my brief, Your Honor, but he said he thought the defendant made a pretty nice appearance and that, and seemed credible. And that, together with his statement where he very openly and casually talked to the police about this, he thought was a real good defense opportunity to go for lack of knowing conduct and head for an involuntary manslaughter instruction. And his whole case was based on, you know, the defendant said in his statement, I did a stupid thing in shooting at the house, but there was no malice. It was reckless. I didn't think anybody was there. The judge found the credible, very credible, the attorney's testimony that the defendant agreed with his approach to this defense. The judge noted that the defendant and defense counsel got an involuntary manslaughter instruction. The judge found no reasonable probability that the motion to suppress would have succeeded had it been brought. He found that even if the motion to suppress was granted and was heard, the people's case was still adequate. The people still would have had enough evidence. He found defense counsel's strategy was sound. And, indeed, the people did with the testimony of that first witness, Mr. Griffin, I believe his name was. I'm uncertain of that person's name. Yeah, Griffin. He, Mr. Griffin, said that after the eventual victim had the altercation with that unknown person, maybe his name was McGee, at the gas station, he got together with the defendant to get the gun. So Griffin's testimony alone would put Childs, the defendant, at the scene with the gun. And, indeed, in his opening statement, you know, defense counsel said there's no question here about the defendant shooting at the house. It's just there's no way, ladies and gentlemen of the jury, his argument when this amounts to a murder case, because he had no reason to think the house was occupied. And you'll see that from this very nice videotaped statement, which we're considering to be evidence helpful to the defense. In short, Your Honor, it's the no manifest error standard because there was an evidentiary hearing. The judge was pretty meticulous in his findings. And it's clear when you look at all the defendant's attorney's testimony, he's not merely saying, although he essentially used those words, he didn't recall the defendant telling him that he frequently asked for an attorney and that was denied. He was saying he said the defendant did not say anything regarding that in any way made him think there would be something to a motion to suppress. Indeed, the defendant simply did not convince his attorney that there was any basis for a motion to suppress on the ground that the police denied him his attorney. And, indeed, the statement itself helped belie that, defense counsel said, given the casual, pleasant way he spoke with the police about, I did a stupid thing, but not a criminally, knowingly murderous type thing.  Thank you. Counsel for the state argues that the judge's memo was meticulous. I think if you take a look at it, you could say it was long. I'm not sure how meticulous you would say it was. For instance, in the memo, in saying that the trial counsel's trial strategy was a solid, sound trial strategy, he said he nearly prevailed at trial. 12-0 isn't nearly, or whatever, 12-0, 6-0, isn't nearly prevailing at trial. The state also acknowledges in its own brief that the defendant was never specifically asked in the video if he thought anyone was in the house. We go back to the fact that the trial counsel's explanation, even if we get past whether he recalled it or whether he didn't remember it, whatever spin you put on that, his reason for not pursuing a motion to suppress is flawed. There's no reason not to pursue a motion to suppress. It would have changed the case considerably, and as the state acknowledges in their own brief, the video doesn't really go specifically to what they're trying to show is that the defendant reasonably believed no one was at home in the house. I might also point out that that's a very difficult burden to carry anyway. It's the early morning hours. It's a house. A lot of the case law out there seems to indicate that you can presume someone is asleep in the house in the early morning hours. One more thing about whether Shadid didn't recall or whatever. He did recall. He specifically recalled. He testified that one of the defendant's claims was that the officers told him that nothing to worry about talking to us. You'll only get an involuntary manslaughter and showed him a Chapter 38. He specifically denied that. So the fact that he didn't remember the defendant telling him he had invoked counsel, I think, carries a little bit more weight. If Your Honors don't have any questions? I don't think so. Thanks very much. Thank you. And thank you both for your argument today. We will take this matter under advisement, get back to you with a written disposition within a short day. And we'll now take a short recess for panel change.